Robert L. Herbst (RH 8851)
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354
rherbst@herbstlawny.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

AHMED ELKHOULY and EVELINA VELEZ,

                   Plaintiffs,                  COMPLAINT

               -against-

THE CITY OF NEW YORK,            JURY TRIAL DEMANDED
Police Officer PETER MARTER (Shield No. 18790),
and Police Officer TIMOTHY FINN (Shield No. 02795),

                  Defendants.         ECF CASE

------------------------------------------------------------------x

       Plaintiffs AHMED ELKHOULY and EVELINA VELEZ, by their attorneys, HERBST

LAW PLLC, complaining of the defendants THE CITY OF NEW YORK, Police Officer PETER

MARTER [hereinafter "MARTER"] and Police Officer TIMOTHY FINN [hereinafter "FINN"],

allege as follows:

## PRELIMINARY STATEMENT

       1.    AHMED ELKHOULY was operating a food cart on or about April 3, 2016, at or

about 5 p.m. on West 36th Street and 11th Avenue in front of the Javits Convention Center

("JCC") when the wind apparently blew the food cart umbrella onto a nearby vehicle standing at

the curb.  He surveyed the vehicle with its driver -- a woman waiting to pick up her son at the

JCC -- and initially ELKHOULY and the woman could not find any damage to the vehicle.

2.      Thereafter, the woman's son exited the JCC and alleged that the vehicle's windshield had been damaged by the cart umbrella and demanded from ELKHOULY the sum of $300, and threatened to call the police if he did not pay.  ELKHOULY did not pay the demanded sum, and the police were summoned.

3.      Defendants MARTER and FINN, uniformed New York City Police Officers, responded to the scene.  At the scene, MARTER and FINN intimidated and threatened ELKHOULY, and arrested and handcuffed him without legal cause or justification, to force ELKHOULY to pay the sum of $200 to the woman and/or her son.

4.      Under duress, ELKHOULY agreed to pay the demanded sum, at which point his handcuffs were removed and he was released from custody.

5.      ELKHOULY was able to use his cell phone to record a portion of his interactions with MARTER and FINN.  When realizing that they had been recorded, MARTER and FINN deleted the recording before returning the cell phone to ELKHOULY.   He was later able to restore the deleted recording.

6.      The New York City Civilian Complaint Review Board ("CCRB") later substantiated ELKHOULY'S allegations of abuse of authority and discourtesy against MARTER and FINN.

**<u>JURISDICTION AND VENUE</u>**

7.      This civil rights action, seeking compensatory damages, punitive damages and attorney's fees and costs, is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988,  the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Article 1, §§ 6, 11 and 12 of the New York State Constitution, and New York state law.

8.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions.

9.     Plaintiff further invokes the pendent and supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

10.     Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which one or more of the defendants resides, and in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

11.     Plaintiff AHMED ELKHOULY, a permanent resident of the City and State of New York, is 25 years old.  He was born and raised in Egypt before coming to the United States more than three years ago.

12.     Plaintiff EVELINA VELEZ is the wife of AHMED ELKHOULY, and a citizen and resident of the City and State of New York.

13.     Defendant THE CITY OF NEW YORK ("the CITY") is and was at all relevant times herein a municipal corporation duly organized and existing under the laws of the State of New York.  The CITY maintained and operated the New York City Police Department ("NYPD"), which acted as the City's agent in the area of law enforcement and for which the CITY is and was ultimately responsible.  The CITY assumed the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

14.     Defendant PETER MARTER (Shield No. 18790) is and was at all relevant times herein employed as a police officer by the defendant CITY, and was a duly appointed agent, servant and employee of the CITY and the NYPD.  Defendant MARTER is being sued in his individual and official capacities.

15.     Defendant TIMOTHY FINN (Shield No. 02795) is and was at all relevant times herein employed as a police officer by the defendant CITY, and was a duly appointed agent,

3

servant and employee of the CITY and its NYPD.  Defendant FINN is being sued in his individual and official capacities.

16.    At all relevant times herein, the individual defendants were acting under color of state law and in the course and scope of their duties and functions as police officers and agents, servants and employees of the defendant CITY, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times herein, the individual defendants were acting for and on behalf of the defendant CITY, with the power and authority vested in them as police officers and agents, servants and employees of the defendant CITY.

17.    At all relevant times herein, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and opportunity to protect plaintiff from the unlawful actions of the other defendant but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

18.    This action is commenced within one year from the date the pendent and supplemental claims herein accrued.

## FACTS COMMON TO ALL CLAIMS

19.    On or about April 3, 2016, ELKHOULY was operating a food cart owned by another individual in front of the JCC in the vicinity of West 36th Street and 11th Avenue.

20.    The food cart had an umbrella attached to it.  In the late afternoon, the wind blew strongly enough that the umbrella came off the cart and apparently fell onto a car standing at the curb, upon information and belief in a no-standing zone.

21.    A woman in the driver's seat of the car got out.  Both the woman and ELKHOULY examined the vehicle for damage, and could not find any.  The woman had a friendly

conversation with ELKHOULY, who did not see the umbrella impact the car.  She told him she was waiting to pick up her son from the JCC.  The woman then returned to her car, and ELKHOULY returned to the food cart after retrieving the umbrella.

22.    At approximately 5 p.m., a young man, upon information and belief the woman's son, arrived and, after examining the car, pointed out a small crack in the corner of the windshield and claimed that it was caused by the umbrella.

23.    The young man demanded that ELKHOULY pay $300 or he would call the police.

24.    ELKHOULY, who did not own the food cart, informed the young man that he did not have the money to pay him.  The young man said he would call the police.

25.    Defendants MARTER and FINN subsequently arrived on the scene and talked to the woman and the young man.

26.    At approximately 5:15 p.m., defendants approached ELKHOULY and verbally abused and threatened ELKHOULY.

27.    Among other things, defendants threatened to take the food cart and arrest ELKHOULY if he did not immediately pay $200 for the damage to the car.

28.    Defendants also threatened that, if he did not pay, they would take him to jail, where he would remain locked up until next Saturday, one week away.

29.    Defendants also said in substance that they were tired of these food carts and people, like ELKHOULY, who did this business in the street.

30.    These statements were laced with profanities, including the F-word.

31.    ELKHOULY protested that he was just a worker, not the owner of the food cart, and that the money he had received from customers of the food cart did not belong to him. Defendants continued to demand that ELKHOULY pay the $200.

32.    ELKHOULY took out his cell phone, purportedly to call the owner of the food cart, and turned on its video-recording function and recorded a portion of his interaction with defendants.

33.    In the recording, when ELKHOULY asked why he had to pay the money, defendants said that he would either pay or get arrested for reckless endangerment.

34.    Under Section 120.20 of the New York Penal Law, a person is guilty of reckless endangerment when he recklessly engages in conduct which created a substantial risk of serious physical injury to another person.

35.    Under Section 15.05(3) of the New York Penal Law, a person acts recklessly when he is aware of and consciously disregards a substantial and unjustified risk that serious physical injury will result to another person.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

36.    Under Article 10 of the New York Penal Law, "serious physical injury" means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

37.    Defendants had no probable cause to believe that ELKHOULY had committed the crime of reckless endangerment.

38.    Defendants were well aware that they had no probable cause to believe that ELKHOULY had committed the crime of reckless endangerment.

39.    Nevertheless, when ELKHOULY declined to pay, defendants arrested ELKHOULY.

6

40.   Defendants arrested ELKHOULY without legal cause or justification.

41.   In the recording, defendants told ELKHOULY that he would either pay the woman or "he was coming in handcuffs, that's it.  End of story."

42.   When ELKHOULY complained about the amount, defendants told him, "I'm telling you, $200. . . .  Listen guy, we all have problems.  You broke the windshield.  $200.  You gonna pay it?  Yes or no?  Yes or No?

43.   ELKHOULY asked, "who set the price?"

44.   Defendants replied, "I'm setting the price.  I'm setting the price.  OK?  It's either that or you are coming with me in handcuffs, and you are not going to get out until fucking Saturday of next week."

45.   ELKHOULY said that he did not have to pay.

46.   Defendants said, "You don't have to pay?  Hands behind your back."

47.   Defendants then made unlawful physical contact with ELKHOULY.

48.   Defendants then asked ELKHOULY, "Are you going to pay the money?  Yes or No?"

49.    ELKHOULY said that he did not have the money to pay it.

50.   Defendants then insisted that he did have the money to pay it, and told ELKHOULY that they were going to take the cart.

51.   ELKHOULY told defendants that the money he had was not his money.

52.   Defendants asked, "What do you mean it is not your money?"

53.   ELKHOULY replied that he was just a worker.

54.   Defendants asked, "So where is all the money from the cart?  Where is all the money you've been making?"

7

55.   ELKHOULY replied that the money was not his, as it belonged to the owner of the food cart, and it was not his to use.

56.   Although there is no video because ELKHOULY's phone had by then been placed in his pocket, the sound of handcuffs clicking can be heard.

57.   Defendants handcuffed ELKHOULY behind his back.

58.   Defendants applied the handcuffs very tightly.

59.   Defendants applied the handcuffs more tightly than necessary or reasonable.

60.   Defendants searched ELKHOULY and discovered his phone in recording mode and stopped it from recording.

61.   Defendants asked ELKHOULY if he had been recording.

62.   When he said he had, defendants deleted what had been recorded.

63.   When ELKHOULY complained that the handcuffs were hurting and asked that they be loosened, defendants declined, saying in substance that "we don't make it for pleasure."

64.   The unnecessarily tight handcuffing caused ELKHOULY physical injury and substantial pain.  ELKHOULY continued to suffer pain from the tight handcuffing for several weeks thereafter.  During that time, he took medication to reduce the pain.

65.   In part because defendants' deletion of the recording had deprived him of evidence of what defendants had done, and because he was in fear of going to jail and losing the cart and his job, ELKHOULY told defendants that he would pay the money demanded.

66.   ELKHOULY subsequently took $200 from the food cart and gave it to defendants.

67.   Defendants counted the money and at first indicated that ELKHOULY had given them less than the $200 demanded. ELKHOULY took the money back from defendants and counted it in their presence and demonstrated that he had in fact given defendants $200.

68.    Defendants then ordered ELKHOULY to give the money to the woman, who was sitting in her car.

69.    ELKHOULY then gave the money to the woman as ordered by defendants.

70.    Defendants released ELKHOULY from custody and left the scene without further processing the arrest.

71.    ELKHOULY was subsequently advised that the deleted recording might be recovered through a function on his phone, and the recording was in fact recovered.

72.    ELKHOULY subsequently made a complaint to the Civilian Complaint Review Board ("CCRB"), an agency of defendant CITY.

73.    On or about July 27, 2016, the CCRB advised ELKHOULY that, following its investigation by the CCRB's investigative staff, the Board of the CCRB had reviewed the evidence and made findings substantiating a total of 10 allegations of misconduct against defendants.

74.    The CCRB found that both defendants FINN and MARTER had committed the misconduct of abuse of their authority by stopping ELKHOULY.

75.    The CCRB found that both defendants FINN and MARTER had committed the misconduct of abuse of their authority by threatening to arrest ELKHOULY.

76.    The CCRB found that defendant MARTER had committed the misconduct of abuse of his authority by threatening to seize ELKHOULY's property.

77.    The CCRB found that defendant FINN had committed the misconduct of discourtesy by speaking discourteously to ELKHOULY.

78.    The CCRB found that defendant FINN had committed the misconduct of abuse of his authority by frisking ELKHOULY.

9

79.    The CCRB found that defendant FINN had committed the misconduct of abuse of his authority by searching ELKHOULY.

80.    The CCRB found that defendant FINN had committed the misconduct of abuse of his authority by interfering with ELKHOULY's use of a recording device.

81.    The CCRB found that defendant FINN had committed the misconduct of abuse of authority by searching ELKHOULY's recording device.

82.    The CCRB recommended to the Police Commissioner that defendants FINN and MARTER be disciplined (Command Discipline A) for each of these findings of misconduct.

### FEDERAL CLAIMS FOR RELIEF

83.    The acts and conduct described above deprived ELKHOULY of his rights:

    a.   not to be deprived of liberty without due process of law;

    b.   not to be subjected to excessive or unreasonable use of force;

    c.   to be free from unreasonable search and seizure of his person and property;

    d.   to be free from false arrest, imprisonment, and unjustified detention;

    e.   to speak and associate freely and to seek redress of grievances;

all in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

84.    Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by the other defendant, but failed to intervene to prevent the unlawful conduct, despite having had a realistic opportunity to do so, thus violating plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

85.   As a result of the acts and conduct of the defendants complained of herein, plaintiff ELKHOULY has suffered deprivation of his liberty, physical injuries, pain and suffering, mental anguish and distress, emotional injuries, shock, fright, apprehension, embarrassment, humiliation, shame, indignity, damage to reputation, special damages, including but not limited to economic loss, and loss of enjoyment of life from the incident and its aftermath, some which injury and damages may be permanent.

86.   The acts and conduct of defendants complained of herein were intentional, wanton, willful and malicious, and in reckless disregard of plaintiff's constitutional rights, thus entitling him to punitive and exemplary damages.

87.   As a result of the acts and conduct of the defendants complained of herein, plaintiff EVELINA VELEZ has suffered the loss of consortium, services, support and society of her husband.

## CLAIMS FOR RELIEF UNDER STATE LAW

88.    The allegations of the preceding paragraphs are incorporated by reference herein.

89.   The acts and conduct of the defendants complained of herein constitute:

   a.  assault (placing plaintiff in apprehension of imminent and harmful and offensive bodily contact);

   b.  battery (making offensive physical contact with and handcuffing plaintiff without privilege or consent);

   c.  unlawful stop, detention and false arrest (stopping, detaining and arresting plaintiff without probable cause to believe that plaintiff had committed reckless endangerment or any other crime or offense, and without any warrant or authority to do so);

> d. unlawful search (conducting a search of plaintiff and his phone without reasonable suspicion or probable cause, privilege or consent);
>
> e. conversion and larceny by extortion (intending to exercise dominion over and compelling or inducing plaintiff to deliver money or property to themselves or a third person by instilling in him a fear that, if the money or property is not so delivered, he will be accused of a crime, criminal charges will be brought against him, and his property will be taken);
>
> f. deprivation and abridgment of freedom of speech (retaliating against plaintiff for questioning, protesting, complaining about and recording perceived police misconduct or mistreatment);
>
> g. loss of consortium, services, support and society of one's husband;
>
> h. negligence and gross negligence in training, hiring, supervision, discipline and retention of police officers;

all under the constitution and laws of the State of New York.

90.    The acts and conduct of defendants complained of herein were intentional, wanton, willful and malicious, and in reckless disregard of plaintiff's rights, thus entitling him to punitive and exemplary damages.

91.    Defendant CITY OF NEW YORK is vicariously liable for the unlawful and tortuous actions of their agents, servants and employees, the individual defendants, under the doctrine of respondeat superior, as the individual defendants were on duty and acting within the scope of their employment when they engaged in those actions.

92.    Within ninety (90) days after the claims herein arose, plaintiff duly served upon, presented to, and filed with the defendant CITY a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

93.    More than thirty (30) days have elapsed since the presentation of plaintiff's claims to the City but the defendant CITY has wholly neglected or refused to make an adjustment or payment thereof.

94.    This action was commenced within one year and 90 days after the claims accrued.

95.    Plaintiff has complied with all conditions precedent to maintaining this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment and pray for the following relief, jointly and severally, against the defendants:

    a. a judgment declaring the actions and conduct of defendants unconstitutional and unlawful;

    b. full and fair compensatory damages in an amount to be determined by a jury;

    c. punitive and exemplary damages in an amount to be determined by a jury;

    d. reasonable attorney's fees and costs and disbursements of this action; and

    e. such other and further relief as appears just and proper.

Dated: New York, New York
        March 30, 2017

                HERBST LAW PLLC

                /s/ Robert L. Herbst
                By: Robert L. Herbst

                Attorneys for Plaintiffs
                420 Lexington Avenue, Suite 300
                New York, New York 10170
                (646) 543-2354
                rherbst@herbstlawny.com